[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10105
Non-Argument Calendar
_____

D.C. Docket Nos. 6:09-cr-00103-GAP-GJK-1; 6:17-cr-00301-GAP-GJK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PRINCE TOBURAS JERMAINE ROLLE,

Defendant - Appellant.

_____

No. 19-10122
Non-Argument Calendar
_____

D.C. Docket Nos.  6:17-cr-00301-GAP-GJK-1; 6:09-cr-00103-GAP-GJK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PRINCE TOBURAS JERMAINE ROLLE,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 19, 2020)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Prince Rolle was convicted of possession with intent to distribute fentanyl and possession of a firearm by a convicted felon.  For this conduct, the district court sentenced him to 210 months in prison.  Because Rolle was serving a term of supervised release when he committed these offenses, the court also revoked his supervised release and imposed a 24-month revocation sentence. The court ordered the two sentences to run consecutively.  Rolle appeals the judgment in each case, and we consolidated the appeals for review.

Rolle presents two arguments on appeal.  First, he asserts that his criminal convictions and the revocation of his supervised release should be reversed because he suffered what amounted to a "complete denial of counsel" under *United States v. Cronic*, 466 U.S. 648 (1984).  Second, he challenges his 210-month sentence on the

ground that the district court erred in applying an enhancement for reckless endangerment during flight.  After careful review, we affirm in all respects.

## I.

We begin with a summary of Rolle's criminal cases.  In February 2011, Rolle was convicted of two drug-trafficking offenses and sentenced to 112 months of imprisonment followed by five years of supervised release.  Rolle's prison term was later reduced to 96 months under 18 U.S.C. § 3582(c)(2).

In January 2017, Rolle began serving the five-year term of supervised release. In October 2017, the government petitioned to revoke Rolle's supervised release on the ground that he had committed new crimes in September 2017.  Based on that same conduct, a federal grand jury returned an indictment in December 2017 charging him with possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Attorney Nicole Dickerson represented Rolle in both the criminal case and the revocation case.

The criminal case proceeded to trial.  Ultimately, three trials were held.  In the first two trials, the district court declared a mistrial after the jury was unable to reach a unanimous verdict.  A third jury found Rolle guilty on September 6, 2018.

According to the evidence presented at the third trial, in September 2017, Orlando Police Officer Joel Williams, a member of the Tactical Anti-Crime Unit

("TAC Unit"), began following a Hyundai Sonata that he saw commit several traffic infractions in a residential area.  Williams was driving an unmarked car, so he radioed for assistance.  Two other officers responded in a marked patrol car, deployed a GPS tracking device at the Sonata, and then attempted to initiate a traffic stop.  Instead of pulling over, the Sonata sped away, accelerating "at an extremely high rate of speed."  The officers permitted the Sonata to drive away but continued to track it by GPS.  Once it appeared that the Sonata had stopped its flight, Williams began following the Sonata again.  Williams then saw a black bag fly out of the Sonata's passenger-side window and land in a grassy area on the side of the road.  Officers recovered the bag, which contained a loaded pistol, 47 grams of fentanyl, 166 grams of the synthetic stimulant "molly," and a digital scale.

Williams continued to follow the Sonata and saw it park at an apartment complex.  The driver exited the car and then fled on foot.  Williams attempted to chase the driver but lost sight of the driver.  TAC Unit officers set up a perimeter and then went door to door to try to locate the driver.  That proved unsuccessful, but Williams found a rental agreement in Rolle's name in the Sonata, and from a subsequent records search he was able to identify Rolle as the driver.  Later that evening, Rolle reported to police that the Sonata had been stolen.  When an officer went to investigate, Rolle stated that the car had been stolen earlier in the day, before the events described above, while he was playing cards at his cousin's house.  But

4

cellular-tower location data for a phone that Rolle regularly used placed the phone in the vicinity of the apartment complex during the foot chase.

At each of the three trials, defense counsel Dickerson actively participated in jury selection, presented an opening statement, lodged objections, and cross-examined witnesses. She argued that Rolle had been misidentified as the driver of the Sonata and questioned government witnesses on their ability to identify Rolle. Dickerson also moved for a judgment of acquittal in the first two trials, called several witnesses in Rolle's defense at each trial, and presented a closing argument at each trial. In particular, at the first two trials, Dickerson called Alexandra Charles, Rolle's fiancée, who offered alibi testimony consistent with Rolle's police report that the Sonata had been stolen. Charles was not called to testify at the third trial after she was warned that the government had opened a perjury investigation into her testimony at the first two trials.

Based on the guilty verdict in the criminal case, the district court found Rolle guilty of the supervised-release violations in the revocation case. The court then held a joint sentencing and final revocation hearing in January 2019. Before the hearing, a probation officer prepared Rolle's presentence investigation report ("PSR"). The PSR recommended a two-level enhancement for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," U.S.S.G. § 3C1.2, in addition to

enhancements for obstruction of justice and possession of a firearm in connection with another felony offense.

Dickerson submitted factual and legal objections on Rolle's behalf. She objected to the enhancements for reckless endangerment during flight and obstruction of justice. She also contended that Rolle warranted a downward departure under U.S.S.G. § 5H1.9 for his lack of reliance on criminal activity to sustain a living, and she submitted character letters from others on his behalf.

At sentencing, the district court overruled Rolle's objections—concluding that Rolle created a risk of bodily injury by fleeing, that he obstructed justice by filing a false police report to support an alibi defense, and that no downward departure was warranted—and calculated a guideline range of 210 to 262 months, which was capped at 240 months due to the statutory maximum, based on a total offense level of 32 and a criminal-history category of VI. The court then asked for arguments "with respect to mitigation and an appropriate sentence." After conferring with Rolle, Dickerson advised that she had "nothing further" and asked for a sentence at the bottom of the guideline range. Stating that it was "struggling to find any mitigation here" in light of Rolle's long criminal history, the district court sentenced Rolle to a total prison term of 210 months, to run consecutively to any revocation sentence, followed by three years of supervised release.

With respect to the revocation case, the district court calculated a guideline range of 33 to 41 months in prison, which was capped at 36 months because of the statutory maximum, based on a Grade A violation and a criminal-history category of VI. *See* U.S.S.G. § 7B1.4(a). Dickerson stated that she "would leave the sentence within the discretion of the Court" but asked that any term of incarceration be imposed to run concurrently with the criminal sentence. Stating that a concurrent sentence would make the supervised-release violation "somewhat meaningless," the court revoked Rolle's supervised release and sentenced him to an additional 24 months in prison, to run consecutively to the criminal sentence.

## II.

Rolle contends that the totality of his trial attorney's conduct, both inside and outside the courtroom, amounted to a complete denial of counsel that demands *per se* reversal as structural error under *Cronic*.[1] Rolle asserts that Dickerson was untimely, unprofessional, distracted, absent, and that she exercised questionable judgment or outright unethical behavior and invited error during a critical stage. We take a moment to fill in some details about the conduct about which Rolle complains.

---

[1] Rolle proceeds solely under *Cronic* and expressly "preserves any ineffective assistance of counsel claim until after his direct appeal has been exhausted."

**A.**

First, according to Rolle, Dickerson was untimely in alerting the district court and the government of the decision to go to trial.  At a pretrial conference, Dickerson had advised that a guilty plea was likely, but, ultimately, Rolle did not plead guilty and appeared for trial, which started on April 23.  On the morning of April 23, Dickerson requested a continuance, citing late discovery disclosures by the government.  After a discussion, the court determined that "part of the problem" was that the "decision to go to trial was made at the last minute," which the court was "not happy about."  But the court ultimately granted the motion for a continuance because, regardless of which party was to blame, the case was "not ready for trial with all this new information having been disclosed one or two business days ago."

**B.**

Second, Rolle asserts, Dickerson was unprofessional in two main ways: (1) subpoenaing numerous law-enforcement officers whom she had no intention of calling as witnesses; and (2) allowing a member of her staff to use her cell phone in the courtroom in violation of a standing order.

Concerning the witness issue, Dickerson's witness lists for the second and third trials contained more than twenty potential witnesses, most of whom were law-enforcement officers from the TAC Unit.  The government complained to the district court that most of these witnesses had "no relevant information to this case" and

would be kept out of duty for the duration of the trial.  Dickerson responded that the listed officers had been named in a report as having been involved in the search for Rolle.  At the second trial, the district court stated that it would be an abuse of process for Dickerson to require the presence of each of the named officers, and Dickerson later informed the court that she had excused several of the officers.  At the third trial, the court advised Dickerson,

> Ms. Dickerson, we went through those last time, and I don't understand subpoenaing all these police officers you're not going to call.  Unless you've got a good explanation, I'm going to have to start imposing sanctions.

The court deferred any ruling at that time, though it warned that "unless there's a good reason for having all these police officers under your subpoena, I'm going to do something about it later."  It does not appear that the court sanctioned Dickerson for her conduct in relation to the witness subpoenas.

With respect to the employee's use of a cell phone, the district court raised this issue with Dickerson on the second day of the third trial.  The court explained that a marshal had observed her employee using Dickerson's cell phone in the back of the courtroom, in violation of a standing order.  When the chief courtroom security officer went to investigate, an altercation ensued, and the employee insulted the officer and was escorted from the building.

After the third trial ended, the chief judge of the Middle District of Florida *sua sponte* ordered Dickerson to show cause why she should not be sanctioned for

her employee's unauthorized use of a cell phone during Rolle's trial. Dickerson failed to appear for the September 18, 2018, show-cause hearing. The judge then initiated criminal contempt proceedings under 18 U.S.C. § 401.

Ultimately, Dickerson appeared for a hearing on November 16, 2018. At the hearing, the government informed the judge that it would be unable to meet the willfulness element of criminal contempt due to the disorganized nature of Dickerson's practice. As a result, the judge dismissed the criminal contempt proceeding. But the judge warned Dickerson that she was not "qualified to practice in the United States District Court based on [her] current level of office organization or professionalism," and that her "cavalier" attitude was "stupefying and unacceptable." The judge referred the matter for potential disciplinary action.

### C.

Third, Rolle contends that Dickerson was "continually distracted" due to her own criminal and disciplinary proceedings. Just before Rolle hired her, Dickerson was arrested as a result of an altercation with officers during a traffic stop. On November 2, 2017, the State of Florida charged Dickerson with resisting an officer without violence. Dickerson was tried and convicted of that offense on March 8 and 9, 2018, before Rolle's first trial. Two members of the Orlando TAC Unit testified at her trial. The state court sentenced Dickerson to serve ten days in jail, but the court suspended her sentence on the condition that she serve 100 hours of

community service.  On September 21, 2018, after the jury verdict against Rolle, Dickerson was remanded to state custody for eight days for failing to complete her 100 community-service hours.

Meanwhile, after the third trial, the Grievance Committee for the Orlando Division of the Middle District of Florida issued a report and recommendation that the district court impose several severe sanctions.  The Grievance Committee found that Dickerson had demonstrated a pattern of unprofessionalism in Rolle's case and other cases.  Dickerson failed to file a response to the report and recommendation, and the district court adopted it in full.  Accordingly, the district court referred her to the Florida Bar, suspended her bar membership in the Middle District of Florida, and prohibited her from appearing in the Middle District of Florida until she completed several conditions and was reinstated to the bar.

In December 2018, the Florida Fifth District Court of Appeal fined Dickerson $200 for her "willful disregard of this Court's orders, her failure to competently represent her clients, and her lack of candor to this Court."  Additionally, Rolle recently notified this Court that the Florida Supreme Court has suspended Dickerson's bar membership for two years beginning in April 2020.

**D.**

Fourth, Rolle complains that Dickerson was repeatedly absent or late to Rolle's status conferences and trials.  The record shows that Dickerson failed to

appear for a February 2018 status conference, which was conducted in her absence, and an August 2018 status conference.  During the latter conference, the court reached Dickerson by phone and warned, "You're making a habit of not appearing or appearing late.  Is it time for me to start fining you for this?"  Dickerson apologized.  The court then scheduled the third trial to start in early September 2018.

Dickerson also was late to trial on occasion.  On the second day of the first trial, Dickerson arrived twelve minutes late, and the district court admonished her but imposed no sanction.  Then, on the second day of the third trial, Dickerson arrived one minute late, and the district court fined her $100.

## E.

Fifth, Rolle maintains that Dickerson exercised questionable judgment throughout the proceedings.  In particular, Rolle points to the following:  (a) her statement that a guilty plea was likely, when no guilty plea was set; (b) her failure to file any pretrial motions, including a motion in limine regarding the cell-phone records and cellular-tower evidence that the government disclosed before the third trial; (c) her failure to call "defense witnesses or experts to attack cellular tower evidence placing Mr. Rolle near the crime"; and (d) her actions in seeking Rolle's release from pretrial detention.

On that final matter, Dickerson filed a motion for Rolle's release from pretrial detention after the second trial ended in a mistrial.  Following a hearing before a

magistrate judge, who noted that Rolle had been ordered detained in the revocation case, Dickerson elected to withdraw the motion and take the matter up in that case first.  Dickerson then did so, but the magistrate judge in the revocation case denied the motion, despite recognizing "some appeal" to her argument for Rolle's release.

## F.

Sixth, Dickerson, in Rolle's view, behaved unethically by allowing Charles to potentially commit perjury during the first two trials and "by failing to alert the court to Ms. Dickerson's own personal conflict of interest with the TAC unit."  Dickerson's witness lists included officers who were involved in her arrest and testified at her trial.  It appears that Rolle believes Dickerson abused subpoena powers as retribution for her prosecution.

## G.

Finally, Rolle claims that Dickerson invited error at sentencing by asking the district court to impose a sentence at the low end of the guideline range.

## III.

A defendant is entitled to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see* U.S. CONST. amend. VI.  "[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland*, 466 U.S. at 684.  A fair trial is one where "evidence subject to adversarial testing is presented to an impartial tribunal

for resolution of issues defined in advance of the proceeding." *Id.* at 685. "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656 (1984).

Because the right to counsel is recognized for its effect "on the ability of the accused to receive a fair trial," *id.* at 658, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," *Strickland*, 466 U.S. at 691. Accordingly, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692.

Ordinarily, to prove prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, the defendant must prove that he was prejudiced by specific errors in counsel's performance. *Stone v. Dugger*, 837 F.2d 1477, 1479 (11th Cir. 1988).

The Supreme Court has recognized, however, that certain circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 659. Prejudice is presumed

where, and only where: (1) there is a complete denial of counsel at a critical stage of the trial, (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or (3) under the circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair.

*Castillo v. Fla., Sec'y of Dep't of Corr.*, 722 F.3d 1281, 1286 (11th Cir. 2013). These circumstances give rise to "structural error" because they "affect[] the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). *Cronic* represents a narrow exception to the general framework for assessing ineffective assistance, and "the burden of proof under *Cronic* is a very heavy one." *Stone*, 837 F.3d at 1479 (emphasis and quotation marks omitted).

Rolle claims that he suffered what amounted to a "complete denial of counsel" due to the aggregate of Dickerson's representation, and omissions from representation, as outlined above. He maintains that Dickerson's performance infected the entirety of the criminal proceedings and that the cost of litigating counsel's errors is unjustified.

Rolle falls well short of the showing required by *Cronic*. Rolle did not suffer a complete denial of counsel at a critical stage of the trial. "Under *Cronic*'s first exception, prejudice may be presumed where counsel is either entirely absent from, or was prevented from assisting the accused during, a critical stage of the trial." *Castillo*, 722 F.3d at 1287. Nothing of the sort occurred here. Dickerson was present throughout every moment of the three trials, even if the proceedings were delayed at

times due to her tardiness, and there is no suggestion that she was prevented from assisting Rolle at any critical stage of the trials.  While she failed to appear for two status conferences, these absences had no discernible effect on the conduct of the trials.  *See Cronic*, 466 U.S. at 658 ("Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

Nor does this case fit within the second exception.  *Cronic*'s second exception is very narrow.  *Castillo*, 722 F.3d at 1287.  It's "reserved for situations in which counsel has *entirely failed* to function as the client's advocate by failing to meaningfully oppose the prosecution's case." *Id.* (emphasis in original) (quotation marks omitted).  In other words, "counsel's failure to test the prosecution's case must be *complete*." *Id.* (emphasis in original) (quotation marks omitted).  Prejudice will be presumed only if counsel "fails to oppose the prosecution throughout the proceeding as a whole, instead of merely failing to do so at specific points." *Id.* (quotation marks omitted).  If counsel's failure is not complete, *Strickland*'s prejudice requirement applies. *Id.*

Rolle cites several instances during the trials and related proceedings where, in his view, Dickerson should have taken certain actions—such as filing pretrial motions, filing a motion for judgment of acquittal at the third trial, calling a defense expert to testify about the phone records and cell-tower data, or arguing differently

at sentencing.  But these are simply alleged errors in the trial and sentencing proceedings that can be assessed individually for their prejudicial effect.  *See Fulminante*, 499 U.S. at 310.  And prejudice is presumed only if counsel "fails to oppose the prosecution throughout the proceeding as a whole, instead of merely failing to do so at specific points."  *Castillo*, 722 F.3d at 1287.

Here, Dickerson subjected the government's case to meaningful adversarial testing.  She did all the things lawyers normally do at trial, including engaging in jury selection and exercising peremptory challenges, presenting opening and closing arguments that advanced a coherent defense, lodging objections, conducting cross-examination, and calling witnesses.  Her efforts led to two declared mistrials because the jury could not unanimously agree on a verdict.  Rolle also filed relevant objections to the PSR and presented argument at sentencing, and she represented Rolle throughout the revocation proceedings.  Accordingly, even assuming Dickerson performed deficiently in the ways alleged by Rolle, Dickerson's conduct did not make the adversary process itself presumptively unreliable.  *See Cronic*, 466 U.S. at 656, 659.

More generally, Rolle has failed to show that Dickerson's representation, however unprofessional or problematic, presented circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  *Id.* at 659.  To be sure, Dickerson was sanctioned for her unprofessional

conduct in Rolle's trial.  But the conduct for which she was sanctioned—arriving late and violating a standing order—has no discernible connection to "the framework within which the trial proceeds." *Fulminante*, 499 U.S. at 310.  Likewise, Rolle fails to explain how Dickerson's own personal criminal or disciplinary matters affected the fairness of his criminal proceedings.  All attorneys have responsibilities outside the courtroom that command their attention, and we cannot simply presume that Dickerson was so distracted by these personal matters that she was unable to discharge her duties to Rolle.

As for Dickerson's alleged conflict of interest with certain witnesses, Rolle offers no indication that this conflict, even if unethically suppressed, adversely affected his counsel's performance in his case. *See Mickens v. Taylor*, 535 U.S. 162, 173–74 (2002) (stating that, in cases where there is not concurrent representation of multiple defendants, a defendant must establish "that the conflict of interest adversely affected his counsel's performance").  Finally, the fact that Charles may have been investigated for perjury does not establish that Dickerson suborned perjury or committed any misconduct in relation to Charles's testimony.

For all of these reasons, Rolle has not met the "very heavy" burden of establishing structural error under *Cronic*.  *See Stone*, 837 F.3d at 1479.  Accordingly, we affirm Rolle's convictions and the revocation of his supervised release.

# IV.

Rolle next argues that the district court erred by imposing a sentencing enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2. We review a district court's factual findings under the Sentencing Guidelines for clear error and its interpretation of the Guidelines *de novo*. *United States v. Carillo-Ayala*, 713 F.3d 82, 87 (11th Cir. 2013). A factual finding "is not clearly erroneous unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Smith*, 821 F.3d 1293, 1302 (11th Cir. 2016) (quotation marks omitted).

In calculating the guideline range, a two-level enhancement is required "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. We have found that "flight alone is insufficient to warrant an enhancement under section 3C1.2." *United States v. Wilson*, 392 F.3d 1243, 1247 (11th Cir. 2004) (finding no reckless endangerment resulted from a flight on foot). But "[d]riving a car at high speed in an area where people are likely to be found constitutes reckless disregard for others' safety." *United States v. Washington*, 434 F.3d 1265, 1267–68 (11th Cir. 2006); *see United States v. Gonzalez*, 71 F.3d 819, 836–37 (11th Cir. 1996) (upholding a reckless endangerment enhancement where the defendant, in

attempting to escape from pursuing officers, "operated his vehicle, in reverse, at a high rate of speed on a residential street").

Here, the district court did not clearly err in determining that Rolle recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law-enforcement officer.  Evidence adduced at trial showed that Rolle initially fled from officers at an "extremely high rate of speed" in a residential area.  Because a residential area is one where "people are likely to be found," the district court did not clearly err in concluding that Rolle's conduct justified the § 3C1.2 enhancement.  *See Washington*, 434 F.3d at 1268; *Gonzalez*, 71 F.3d at 837.  Accordingly, we affirm in this respect as well.

**AFFIRMED**.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 19, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-10105-HH  ; 19-10122 -HH
Case Style:  USA v. Prince Toburas Rolle
District Court Docket No:  6:09-cr-00103-GAP-GJK-1
Secondary Case Number:  6:17-cr-00301-GAP-GJK-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Christopher Bergquist, HH at 404-335-6169.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion